UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **JUSTIN TERRELL ATKINS**<br>**LA DOC # 465731** | * | **CIVIL ACTION NO. 17-1544** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **TIMOTHY HOOPER** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Petitioner Justin Atkins, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 27, 2017. [docs. # 1, 5].[1] Atkins attacks his 2010 convictions for armed robbery and aggravated battery, as well as the 45-year sentence imposed by Louisiana's 4th Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On January 2, 2009, Robert Jones, Howard Bishop, and Tom Harris were drinking together at Jones' modest residence on Jackson Street in Monroe. All three men lived in the neighborhood. Bishop and Jones had just returned to the residence after cashing Jones' VA check. Atkins knew of the transaction.
>
> Atkins kicked in the door, barged into the home, and demanded money from Jones, who refused. Atkins began beating Jones with the butt of a firearm. Harris

---

[1] Atkins resubmitted his petition on January 5, 2018 because he failed to the complete the petition on approved forms. [docs. # 4, 5].

intervened and was also struck with the firearm. Bishop witnessed all of this, even observing Atkins take the money from Jones' pocket.

Lurking at the door during the robbery was a man named Lawrence Horton, known in the neighborhood only as "O." Horton had been living with Harris for a few months. That morning, however, Harris ordered him to leave. Harris had known Horton for about a year.

A few days after the robbery, Harris later found some correspondence at the residence which bore O's real name: Lawrence Horton.

Eight days after the robbery, Horton sent word that he wanted to speak with the police. When Detective Jeffrey Dowdy questioned him, Horton admitted his part in the robbery. He blamed mainly Atkins for this crime.

After an arrest warrant was secured, Atkins was arrested.

Harris later obtained a photo of the robber, whom he identified as "J. Money." Harris gave the photo to the detective, claiming that it depicted the person who beat him, and who had beaten and robbed Jones.

*State v. Atkins*, 46,613 (La. App. 2 Cir. 9/21/11), 74 So. 3d 238, 239.

On June 18, 2010, a jury found Atkins guilty of armed robbery, a violation of La. R.S. 14:64, and aggravated battery, a violation of La. R.S. 14:34. He was subsequently sentenced to 35 years at hard labor for the armed robbery, and a consecutive 10-year hard labor term for the aggravated battery. *Id.*

Atkins filed a direct appeal in the Second Circuit Court of Appeal, raising three issues: (1) insufficient evidence; (2) a tainted lineup identification; and (3) excessive sentence. On September 21, 2011, the Second Circuit affirmed Atkins' convictions and sentences. *Id.* On February 17, 2012, the Louisiana Supreme Court denied Atkins' subsequent application for writ of certiorari and/or review. *State v. Atkins*, 2011-2287 (La. 2/17/12), 82 So. 3d 284. Atkins did not file a petition for certiorari in the United States Supreme Court. [doc. # 5 ¶ 9(h)].

2

On December 6, 2012, Atkins filed an application for post-conviction relief in the state district court, alleging: (1) denial of his Sixth Amendment right to confront and cross-examine the witnesses against him; (2) the trial court erred in allowing a substantial amount of hearsay evidence to prove key elements of the state's case; and (3) counsel was ineffective in trial and pre-trial proceedings. [doc. # 14-1]. On July 27, 2015, Atkins filed an "Amended Brief in Support of Application for Post-Conviction Relief," [doc. # 14-3], which the court denied. [doc. # 14-4]. The Second Circuit Court of Appeal denied his application on April 28, 2016. [doc. # 14-6]. Atkins sought a supervisory and/or remedial writ, which the Louisiana Supreme Court denied on September 29, 2017. *State ex rel. Atkins v. State*, 2016-1082 (La. 9/29/17), 227 So. 3d 251. In its per curiam opinion, the Louisiana Supreme Court found that Atkins had fully litigated his application for post-conviction relief in state court and exhausted his right to state collateral review. *Id.*

On November 27, 2017, Atkins filed the instant federal habeas corpus petition, arguing he was denied his right to confrontation, in violation of the Sixth Amendment to the United States Constitution, when the State introduced testimony from his co-defendant without providing Atkins with the opportunity for cross-examination. (Memorandum in Support ("Mem."), [doc. # 1-2]). The State filed its response on June 22, 2018. [doc. # 18]. Atkins filed a reply on July 30, 2018. [doc. # 19].[2] This matter is ripe.

**Standard of Review**

---

[2] Petitioner's reply is not timely. According to this court's Memorandum Order dated May 21, 2018, Petitioner had twenty days following the filing of the State's memorandum to file a reply. [doc. # 15 at 4]. The deadline for Petitioner to submit a reply was July 12, 2018.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C.

§ 2254, governs habeas corpus relief of a state prisoner. The AEDPA limits how a federal court

may consider habeas claims. After a state court has adjudicated a prisoner's claims on the merits,

federal review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011). An application for a writ of habeas corpus should be granted if the

petitioner shows that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than . . . [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "The 'contrary to' requirement refers to

holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

relevant state-court decision." *Id.* at 740 (citations and internal quotations omitted). "[U]nder the

'unreasonable application' clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but

unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741 (quoting

*Williams*, 529 U.S. at 413).

4

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

<u>**Discussion**</u>

**I.      Claim**

Atkins argues that he is entitled to habeas corpus relief because his Sixth Amendment right of confrontation was violated by the introduction of inadmissible hearsay evidence. (Mem. at 7). His claim centers around the prosecution's opening statements before the jury and the testimony of Detective Jeffrey Dowdy. In its opening statement, the prosecution stated, in relevant part:

> Finally, I believe the State will have the testimony of Lawrence Horton. Lawrence Horton is a co-defendant in this case. That he was arrested for this offense as well as the defendant in this case. I believe that he will tell you that he and defendant met on the morning of January 2nd, 2009. That they went ultimately to 1710 Jackson Street wherein the defendant, Mr. Atkins over here, busted the door in at 1710 and robbed and beat the victims while he himself, Mr. Horton, served as a lookout. And I believe that will – you will anticipate that testimony as well.

[doc. # 18-3 at 764-65].

During the trial, the following exchange occurred between the prosecution and

Detective Dowdy:

| | |
|---|---|
| Prosecutor: | What happened next with regard to your investigation? |
| Det. Dowdy: | The next thing that I did occurred on January the 10th, 2009. |
| Prosecutor: | Okay. And what – what happened on that date? |
| Det. Dowdy: | I was contacted by Monroe Police Department, Sergeant Isaac Gayden, who stated that Lawrence Horton wanted to speak with me regarding this – this case. |
| Prosecutor: | Okay. And did you in fact speak with Lawrence Horton? |
| Det. Dowdy: | Yes, sir, I did. |
| Prosecutor: | All right. Was he advised of his rights? |
| Det. Dowdy: | Yes, sir, he was. |
| Prosecutor: | And did he provide a statement to you? |
| Det. Dowdy: | Yes, sir, he did. |
| Prosecutor: | Was that statement inculpatory? Did he – |
| Det. Dowdy: | Yes, sir, it was. |
| Prosecutor: | Okay. Did he implicate anybody else? |
| Det. Dowdy: | Yes, sir, he did. |
| Prosecutor: | Okay. As a result of this – well, all right, he implicated someone else. What did you do next with regard to your investigation? |
| Det. Dowdy: | Based on the – the information that he provided he was arrested and again, based on the information that he provided I was able to obtain a warrant. |
| Prosecutor: | For whom? |
| Det. Dowdy: | Justin Atkins. |
| Prosecutor: | Okay. And why was he, you know, never mind. You obtained a warrant for Justin Atkins and that warrant was signed by a Judge? |
| Det. Dowdy: | Yes, sir. |
| Prosecutor: | Okay. And ultimately Mr. Atkins was arrested on that warrant? |
| Det. Dowdy: | Yes, sir, that's correct. |

(*Id.* at 793-94).

Despite the prosecution's opening statement, Horton did not testify at Atkins'

trial. Atkins claims that Detective Dowdy's testimony regarding Horton is hearsay, and

because Atkins was unable to cross-examine Horton, the admission of Dowdy's

testimony violated the Confrontation Clause. (Mem.)

The State responds that Detective Dowdy's statement is not hearsay, and therefore, Atkins' right to confrontation was not violated. [doc. # 18 at 10-11]. The State also claims there was sufficient evidence to convict Atkins without Horton's testimony, which is why the State decided not to present Horton's testimony. (*Id.* at 12).

## II.    Law

Federal courts do not "review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). Indeed, "the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Id.* (citations omitted). Therefore, to obtain relief on his claim that the state court permitted inadmissible hearsay testimony at trial, Atkins must prove that the erroneous admission was so prejudicial as to deny him of a constitutionally fair proceeding. *See Dixon v. Warden, Louisiana State Penitentiary*, No. CIV.A. 11-2100, 2012 WL 6803686, at *7 (W.D. La. Nov. 30, 2012).

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). In general, the Confrontation Clause "bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 54-56 (2004)). For example, the United States Supreme Court has held that the admission of a non-testifying co-defendant's confession at a joint criminal trial violated the defendant's "right of cross-examination secured by the Confrontation

Clause of the Sixth Amendment." *Bruton v. United States*, 391 U.S. 123, 126 (1968). Similarly, the Supreme Court has excluded the confession of a co-defendant who had been tried separately and found guilty because the defendant had no opportunity for cross-examination. *Douglas v. State of Ala.*, 380 U.S. 415, 419 (1965). Further, "[p]olice officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course of their investigation, when those statements inculpate the defendant." *Taylor*, 545 F.3d at 335.

However, the Confrontation Clause is only implicated when the out-of-court statement is hearsay. *Tennessee v. Street*, 471 U.S. 409, 414 (1985). Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. Code Evid. art. 801(c). "The Louisiana Supreme Court has repeatedly held that a Police Officer, in explaining his own actions, may refer to statements made by other persons involved in the case." *Dixon*, 2012 WL 6803686, at *8 (collecting cases). As set forth in *State v. Calloway*, 324 So. 2d 801, 809 (La. 1975), statements made "to explain the sequence of events leading to the arrest of the defendants from the viewpoint of the arresting officers" are not hearsay.

## III.    Analysis

Atkins has failed to demonstrate that the trial court's admission of the testimony denied him the right to a constitutionally fair proceeding or even that the admission of Detective Dowdy's testimony was erroneous.

The state court found that Detective Dowdy's statements were not hearsay. The court reasoned that although Detective Dowdy made statements "in reference to the conversation

between Atkins and Mr. Horton, this conversation was used to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the arresting officers" and was not offered to prove the truth of the matter asserted. [doc. # 14-4].

Upon review of the trial transcript and the state court's opinion, the undersigned finds that Atkins' claim lacks merit. The record reflects that Detective Dowdy's testimony was not introduced to prove that Atkins committed the crimes. Rather, the testimony was used to explain Dowdy's course of investigation and what led to his arrest of Atkins. Further, Detective Dowdy did not provide the substance of any of Horton's statements. Therefore, Detective Dowdy's testimony is not hearsay, and Atkins' Sixth Amendment confrontation rights have not been violated.

Accordingly, Atkins' claim should be **DISMISSED**.

## Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that the petition for habeas corpus filed by Petitioner Justin Atkins [docs. # 1, 5] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 19th day of November 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

10